UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Communications Workers of America
and its Local 7270,                                                     Civil No. 08-650 (DWF/SRN)

          Plaintiff,

v.                                                                                   **MEMORANDUM**
                                                                                    **OPINION AND ORDER**
Frontier Communications of Minnesota, Inc.,
a Citizens Communication Company,

          Defendant.

---

Gregg M. Corwin, Esq., Gregg M. Corwin & Associates Law Office, PC; and Richard Rosenblatt, Esq., Richard Rosenblatt & Associates, LLC., counsel for Plaintiffs.

Courtney Mueller, Esq., and Thomas M. Beck, Esq., Jones Day; Dean A. LeDoux, Esq., Gray Plant Mooty Mooty & Bennett PA; and Kevin J. Saville, Esq., Frontier Communications of Minnesota, Inc., counsel for Defendant.

---

## INTRODUCTION

Plaintiff Communications Workers of America and its Local 7270 (the "Union") entered into a 2006 Collective Bargaining Agreement (the "Agreement") with Defendant Frontier Communications of Minnesota, Inc. ("Frontier"). The Union filed a grievance alleging a violation of the Agreement. Frontier refused to participate in the grievance procedure or to arbitrate the Union's grievance and the Union brought this action seeking an order requiring Frontier to participate in the grievance and arbitration procedure.

Frontier now moves to dismiss the Union's Complaint. For the reasons stated below, Frontier's motion is denied.

## BACKGROUND

The Union and Frontier are parties to the Agreement, which is effective from June 1, 2006 to May 31, 2009. (Compl. ¶ 7, Ex. 1.) Article 1 of the Agreement provides that "the Union [is] the exclusive collective bargaining representative in matters with respect to wages, hours, and working conditions for all of its Operations' and Call Center employees who are included in the Bargaining Unit." (*Id.* ¶ 7, Ex. 1 at Art. 1.01.)

> Article 24 of the Agreement provides a grievance procedure that reads in part:
>
> Should any grievance or difference arise between [Frontier] and the Union, or any employee or employees covered by this Agreement, as to . . . the application or interpretation, or alleged violation of the provisions of this Agreement, such grievance or difference shall be processed in accordance with the following procedure.

(*Id.* ¶ 7, Ex. 1 at Art. 24.01.) Article 24 goes on to describe a three-step grievance procedure.

> Article 25 of the Agreement provides an arbitration procedure for grievances that are not resolved under Article 24. Article 25 reads in part:
>
> The provisions for arbitration under this Agreement only apply to those matters, which are referred to in Paragraphs a. and b. below:
>
> a. Any grievance or difference involving the alleged unjust discharge, or the interpretation, or alleged violation of any of the provisions of this Agreement.

(*Id.* ¶ 7, Ex. 1 at Art. 25.01.)

On December 11, 2007, the Union filed a grievance alleging a violation of Article 29 of the Agreement. (*Id.* ¶ 14, Ex. 2.) Article 29 provides, in part, medical benefits for retired employees who were hired prior to May 1, 1998. (*Id.* ¶¶ 7, 12; Ex. 1 at Art. 29.03.) The Union alleges that Frontier "engages in a continuing violation of the contract by failing to provide health insurance for certain employees retired from the company." (*Id.* ¶¶ 13, 14; Ex. 2.) Frontier informed the Union that it would not agree to arbitrate the grievance because the Union does not represent Frontier's retirees. The Union then brought the current action, pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), seeking an order requiring Frontier to participate in the grievance and arbitration procedure. Frontier now moves to dismiss the Union's Complaint.

## DISCUSSION

### I.     Standard of Review

Frontier moves to dismiss the Union's Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Rule 12(b)(1) provides that a party may move to dismiss a complaint for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A court lacks subject matter jurisdiction over a claim if the plaintiff lacks standing. *See Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002). Here, Frontier challenges the Union's pleading on its face and, therefore, the non-moving party receives the same protections as it would under Rule 12(b)(6). *See Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

Under the Rule 12(b)(6) standard, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 1964–65. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 1965.

## II.   Standing to Compel Arbitration

Section 301(a) of the LMRA grants a district court jurisdiction to compel arbitration under a collective bargaining agreement. 29 U.S.C. § 185(a). A petitioner who seeks a motion to compel arbitration must have standing to pursue such relief. To have standing under Article III of the Constitution, a plaintiff must allege (1) a concrete injury in fact, (2) that is fairly traceable to the challenged action, and (3) that is likely to be redressed by the relief sought. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Frontier asserts that the Union's claim fails because the Union has not established that it has standing to represent the affected retirees at arbitration and, therefore, the Court lacks subject matter jurisdiction over the dispute.[1] In particular, Frontier argues that the Union does do not have standing to arbitrate disputes pertaining to retiree benefits without the consent of the affected retirees.[2] Frontier argues that retirees are not "employees" under the NLRA and that permitting a union to pursue the rights of retirees without consent would result in duplicative litigation and inconsistent outcomes.

---

[1]   Frontier originally asserted that the Union's Complaint fails because the Complaint does not allege facts sufficient to demonstrate that the underlying grievance is arbitrable. Frontier has since conceded that this case involves a substantively arbitrable dispute and that the standing issue is the sole issue before the Court.

[2]   Undisputedly, the Union did not obtain the consent of the retirees who may be affected by the underlying grievance.

Frontier points out that the Supreme Court of the United States has held that retired workers are not "employees" within the meaning of the NLRA and that a union cannot serve as the exclusive bargaining representative of retirees.  *See Allied Chem. & Alkali Workers, Local Union No. 1. v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 172, 183-88 (1971).  *See also Anderson v. Alpha Portland Indus., Inc.*, 752 F.2d 1293, 1296 (8th Cir. 1985).  The issue before the Court, however, is whether the Union has standing to arbitrate grievances regarding retiree benefits that the Union bargained for—and more specifically whether the Union must obtain retiree consent before arbitrating such a grievance.  This issue has not been directly addressed by the Eighth Circuit Court of Appeals.

In support of its position, Frontier relies primarily on *Crown Cork & Seal Co. v. International Association of Machinists & Aerospace Workers*, 501 F.3d 912 (8th Cir. 2006), for the proposition that labor unions lack standing to arbitrate disputes pertaining to retiree benefits absent explicit consent of the affected retirees.  In *Crown Cork*, the Eighth Circuit held that an employer had no duty to arbitrate retirees' benefits grievances when those benefits did not vest prior to the expiration of the relevant collective bargaining agreements.  501 F.3d at 919.  While the issue of retiree consent was raised by the district court, it was not appealed to the Eighth Circuit.  *See Crown Cork & Seal Co. v. Int'l Ass'n of Machinists & Aerospace Workers*, No. 8:03cv222, 2006 WL 2738948, at *9 (D. Neb. 2005) ("The fact that the retirees are not included in the bargaining unit is of no consequence since the Union now has consent to proceed on their behalf."),

*reversed by Crown Cork & Seal Co.*, 501 F.3d 912 (8th Cir. 2007). Therefore, the Eighth Circuit in *Crown Cork* never directly addressed the issue of retiree consent.

Other circuit decisions offer some guidance. The Third and the Ninth Circuits have permitted unions to arbitrate grievances regarding retiree benefits under current contracts. *See United Steelworkers of Am., AFL-CIO v. Canron, Inc.*, 580 F.2d 77, 80-81 (3d Cir. 1978) (holding that union has standing to represent retirees in seeking arbitration under collective bargaining agreement) ("*Canron*"); *United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Employees of Asarco, Inc.*, 512 F.3d 555, 564 (9th Cir. 2008) (holding that retirees were not excluded from the relevant arbitration procedure) ("*Asarco*"). The issue of consent was not discussed in either *Canron* or *Asarco*. The Sixth Circuit, however, required a union to obtain consent of the retiree to arbitrate a retiree's benefits. *See Cleveland Elec. Illuminating Co. v. United Workers Union of Am.*, 440 F.3d 809, 818 (6th Cir. 2006).[3]

Frontier also cites to *Rosetto v. Pabst Brewing Co., Inc.*, 128 F.3d 538, 539-40 (7th Cir. 1997). This case, however, is inapposite. In *Rosetto*, a union filed a grievance against the defendant company alleging that the company had breached a collective bargaining agreement by unilaterally eliminating retiree benefits. *Rosetto*, 128 F.3d at

---

[3]   The Fifth Circuit has held that a union has standing to represent retirees who expressly authorized the union to represent them. *See Int'l Assoc. of Machinists & Aerospace Workers Local Loge 2121 v. Goodrich Corp.*, 410 F.3d 204, 212 (5th Cir. 2005). However, because the *Goodrich* case involved retirees who had already provided consent, the Fifth Circuit did not consider whether a union could represent retirees absent consent.

539. The Seventh Circuit held that the union lacked standing to arbitrate the retiree's grievance, explaining that the union did not have a right to represent the retirees without their consent. *Id.* at 541. However, the facts of *Rosetto* differ significantly from the present case in that the underlying contract between the union and the company in *Rosetto* did not give the union the right to arbitrate on its own behalf. *Id.* at 539 ("The arbitration provision in the CBA provides for appeal to arbitration of 'all grievances or misunderstandings between the Company and its employees.'") Here, Article 24.01 of Agreement specifically grants the Union the right to pursue a grievance and, if necessary, arbitration on its own behalf. (Compl. ¶ 7, Ex. 1 at Art. 24.01 ("Should any grievance of difference arise between [Frontier] and the Union, or any employee or employees covered by this Agreement . . . such a grievance or difference shall be processed in accordance with the following procedure.").)

The Union asserts that is has standing because it is seeking to enforce Article 29 and in doing so, it is addressing its own grievances with Frontier. Here, the Union and Frontier entered into the Agreement. Frontier made contractual promises to the Union to provide certain retiree health benefits. In addition, Frontier agreed to arbitrate disputes about the meaning or alleged violation of those contractual provisions. Frontier cannot bargain for terms in an existing collective bargaining agreement that presumably were negotiated in exchange for a benefit and then unilaterally fail to honor the agreed-upon term by claiming that the party who entered into the agreement (the Union) lacks standing to enforce it. *See, e.g.*, *Int'l Bhd. of Elec. Workers AFL-CIO v. Citizens Telecomms. Co.*

*of Cal., Inc.*, No. Civ. S-06-0677 WBS DAD, 2006 WL 1377102, at * 4 (E.D. Cal. May 18, 2006). "It is 'axiomatic' that a party to an agreement has standing to sue a counter-party who breaches that agreement, even where some or all of the benefits of that contract accrue to a third party." *See Frontier Commc'ns of N.Y., Inc. v. Int'l Bhd. of Elec. Workers, AFL-CIO*, No. 07 Civ. 10327 (GEL), 2008 WL 1991096, at *3 (S.D.N.Y. May 6, 2008). The Court concludes that the Union has standing to seek to vindicate its own contractual rights under the Agreement without obtaining the consent of affected retirees. In addition, because the parties agreed to arbitrate disputes over the meaning of the Agreement, arbitration is the appropriate forum.

The Court acknowledges that the Union's grievance would likely not be *res judicata* against Frontier's affected retirees who do not agree to be bound by the outcome of the dispute. Thus, there is the potential risk that multiple claims will be asserted against Frontier. This risk, however, does not trump the Union's right to enforce its rights under the Agreement. In addition, even if the Union were required to obtain the consent of affected Frontier retirees, the potential for duplicative litigation would remain. There could always be non-consenting retirees who choose to pursue litigation individually. Moreover, requiring retiree consent would create other potential problems. For example, a retiree who consents to Union representation would also likely forfeit future litigation rights, yet it is uncertain as to who would provide the retiree legal counsel on the relinquishment of such rights. The Court also acknowledges potential conflicts in a union's contemporaneous representation of current employees and retirees. However,

such conflicts would persist even if the Union received the consent of affected retirees. Therefore, the risk of a conflict does not alter the Court's conclusions.

For the reasons stated above, the Court concludes that the Union has standing to pursue its grievance and that arbitration is the appropriate forum for such grievance. Accordingly, Frontier's motion to dismiss is denied.

## CONCLUSION

For the reasons stated, **IT IS HEREBY ORDERED** that:

1. Frontier's Motion to Dismiss (Doc. No. 9) is **DENIED**.

Dated: August 19, 2008
               s/Donovan W. Frank
               DONOVAN W. FRANK
               Judge of United States District Court